*Worksharing Agreement Between*
*The District of Columbia Office of Human Rights*
*and*
*The U.S. Equal Employment Opportunity Commission*
*Washington Field Office*
*For Fiscal Year 2000*

I.  Introduction

   A. The District of Columbia Office of Human Rights, hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of two or more employees occurring within the District of Columbia based on race, sex, age, national origin, religion, color, handicap, sexual orientation, political affiliation, marital status, family responsibility, personal appearance, or matriculation, pursuant to the District of Columbia Human Rights Act of 1977, as amended, Title 1 Chapter 25 of the District of Columbia Code.

   The Equal Employment Opportunity Commission, hereinafter referred to as the EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e) (hereinafter referred to as Title VII). The EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621 *et seq.*) (ADEA), for unequal wages based on sex under the Equal Pay Act of 1963, as amended (29 U.S.C. § 206) (EPA), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101 *et seq.*) (ADA).

   B. In recognition of, and to the extent of the common jurisdiction and goals of the two Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate District of Columbia and Federal laws.

II. Filing of Charges of Discrimination

   A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the Agency that initially receives the charge.. EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706(c) and (e)(1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to

determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one Agency to another in accordance with the terms of this agreement or by other mutual agreement.

B. The FEPA shall take all charges alleging a violation of Title VII, the ADEA, the EPA, or the ADA where both the FEPA and the EEOC have mutual jurisdiction, or where the EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III.A.1. below, refer them to the EEOC for initial processing.

C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and/or assist any person alleging employment discrimination to draft a charge in a manner that will satisfy the requirements of both Agencies to the extent of their common jurisdiction.

Normally, once an Agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the FEPA within the framework of a mutually agreeable system. Each Agency will advise Charging Parties that charges will be resolved by the Agency taking the charge except when the Agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III, "Division of Initial Charge-Processing Responsibilities."

D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form, which within statutory limitations is acceptable in form and content to the EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge.

E. Each Agency will make every effort to transmit electronically all dualfiled charges to the other Agency within two working days of receipt. The Agency that initially takes the charge will provide notice of the charge to the Respondent within ten calendar days of receipt. The Agency will also send to the other Agency a hard copy of the charge and Form 212-A within ten calendar days of receipt.

1. The EEOC will use EEOC Form 212-A, Charge Transmittal to send charges to the FEPA. The form will be completed in duplicate. The FEPA will complete the bottom portion of the form and return it within ten working days of receipt. If other transmittal arrangements are agreed upon, receipt by the FEPA must be documented.

2. The FEPA must also transmit charges to the EEOC using this form. The EEOC will complete the bottom portion of the form and return it to the FEPA within ten working days of receipt.

3. Whenever the original of the Form 212-A is sent or returned to the FEPA, the EEOC will retain a copy in the charge file. The EEOC number and the FEPA's charge number must be entered on all transmittals between the EEOC and the FEPA.

F. Each Agency will also forward all other relevant data obtained at the time of intake, within ten calendar days of receipt.

G. Each Agency agrees that it will notify both the Charging Party and Respondent of the dualfiled nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, state, or local statutes.

H. The delegation of authority to receive charges contained in Paragraph II.A. does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge.

III. Division of Initial Charge-Processing Responsibilities.

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII; and by the ADA, and the transmittal of charges of age discrimination pursuant to the ADEA, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A. The EEOC and the FEPA will process all Title VII, ADA, and ADEA charges that they originally receive.

1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

   In addition, the EEOC will initially process the following charges:

   - All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

   - All disability-based charges that may not be resolved by the FEPA in a manner consistent with the ADA;

   - All EPA and all concurrent Title VII/EPA charges;

- All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision making process;

- All charges filed by EEOC Commissioners;

- All directed investigations by the EEOC under the ADEA and the EPA;

- Charges also covered by the Immigration Reform and Control Act;

- Complaints referred to the EEOC by the U.S. Department of Justice, the Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691 and class complaints retained by these agencies for action;

- Any charge where the EEOC is a party to a conciliation agreement or a consent decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all conciliation agreements and consent decrees that have features relevant to the disposition of subsequent charges;

- Any charge alleging retaliation for filing a charge with the EEOC or for cooperating with the EEOC; and

- All charges against Respondents that are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

As part of perfecting the charge, the FEPA agrees to serve notice to the Respondent within ten days of receipt, dual-file the charge with the EEOC, and also dual-file any charge alleging a violation of the ADEA with the Virginia Council on Human Rights.

If a potential Charging Party comes to the EEOC and has already visited the FEPA, the EEOC will conduct the intake interview, perfect the charge, and investigate the charge. This type of charge will be dualfiled with the FEPA but will not be sent to the FEPA for investigation and, thus, will not be available for contract credit to the FEPA.

2. The FEPA will initially process the following types of charges:

- Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

- Any charge where the FEPA is party to a Conciliation Agreement or a Consent Decree that, upon mutual conciliation and agreement, is relevant

4

to the disposition of the charge. The FEPA will provide the EEOC with an ongoing list of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

- All charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA ordinance, or where the EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but the FEPA can process that charge;

- All charges against Respondents that are designated for initial processing by the FEPA in a supplementary memorandum to this Agreement; and

- All disability-based charges against Respondents over which the EEOC does not have jurisdiction.

B. Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. Each Agency will notify the other on a quarterly basis of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list, a copy of the new charge will be sent to the other Agency's litigation unit within ten working days.

IV. FEPA Processing of Charges under the ADA

A. The FEPA's law is similar to the ADA, but has the following important differences:

  1. The statute does enunciate a standard for evaluating safety requirements. It appears that the law requires a balancing test between the extent of the risk involved and the rights of the individual with a disability.

  2. The statute allows pre-employment disability-related inquiries, if they are justified by business necessity, and contains no restrictions on disability-related inquiries and medical examinations of employees, and contains no confidentiality provisions. The FEPA, however, interprets the law to include the ADA restrictions.

  3. The statute does not contain a provision prohibiting discrimination through a contact. The FEPA, however, interprets the law to include such a prohibition.

    4. The statute does not contain a provision prohibiting discrimination on the basis of a relationship or an association with an individual with a disability. The FEPA, however, interprets the law to include such a prohibition.

  B. Recognizing the differences set forth above, the FEPA and the EEOC agree to the following:

    1. For each FEPA ADA charge resolution that involves one or more of the issues identified in Paragraph A above, the FEPA will provide the EEOC with a statement that identifies the issues (from the above list of issues) that were addressed in resolving the charge.

    2. The FEPA will transfer to the EEOC for initial processing each disability charge it originally receives where it will not receive and resolve all alleged issues in a manner consistent with all requirements, standards, prohibitions, and restrictions set forth in the ADA.

V. Exchange of Information

  A. Both the FEPA and the EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information that may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract.

  B. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the Agency providing the information. With respect to all information obtained from the EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, the ADEA, the EPA, and the ADA.

  C. Each Agency agrees to bind its volunteers and/or its contractors/contract employees who are retained to process dual-filed charges to the same confidentiality requirements. Each Agency agrees to require such volunteers and contractors/contract employees to sign a confidentiality agreement. That agreement will state, at a minimum, that the person may not disclose the existence of a charge, or any information obtained during the processing of a charge, with anyone other than the parties, their representatives, witnesses relevant to the investigation of the case, and the EEOC or FEPA employees. Any disclosure associated with the notice of and holding of a public hearing by the FEPA will not be deemed in violation of these confidentiality requirements.

D. In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

VI. Resolution of Charges

A. Both agencies will adhere to the procedures set out in EEOC's Order 916, Substantial Weight Review Manual, and the State and Local Handbook, as revised. If there are procedural changes at any point during the contract year, the Agencies agree to renegotiate the terms of this section, as appropriate.

B. For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to substantial weight review. The evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements, including, but not limited to:

1. Jurisdictional requirements,

2. Investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

3. Relief, if appropriate.

4. Mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearings, or consent orders to which the FEPA is a party.

C. In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles. In particular, FEPA reports on EEOC Forms 322 and 472 and accompanying closing documents must be received by the EEOC no later than the eighth day after the reporting month, except at the end of a quarter, when the deadline is the fifth day.

D. For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the Charging Party has no administrative recourse, appeal, or other avenue of redress available under applicable state and local statutes.

VII. Implementation of the Worksharing Agreement

A. Each Agency will designate a person as liaison official for the other Agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be Winona Lake, Associate Director. The liaison

official for the EEOC will be Laura W. Nawrocki, Acting State and Local Coordinator.

B. The Agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C. The EEOC will provide original forms to be copied by the FEPA, in accordance with the regulations and the Compliance Manual, to be used by the FEPA in correspondence with Charging Parties and Respondents.

D. This Agreement shall operate from October 1, 1999 to September 30 in the year the contract ends and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date 15 SEPT 1999

Tulio L. Diaz, Jr., Director
U.S. Equal Employment Opportunity Commission
Washington Field Office

Date 8/26/99

Winona Lake, Associate Director
DC Office of Human Rights

8

*FY 2001 Extension of Worksharing Agreement*

Inasmuch as there have been no substantive changes in the processes, procedures, statutes, policies or regulations that would adversely affect or substantially alter the worksharing arrangement between the Washington Field Office and the D.C. Office of Human Rights, or that would affect the processing of charges filed under the pertinent Federal, state or local statutes, the parties agree to extend the current worksharing agreement that was executed on September 15, 1999 through the FY 2001 Charge Resolution Contract Option Period. This agreement, as well as the attendant Worksharing Agreement may be reopened and amended by mutual consent of the parties.

\_\_9/7/00\_\_  _____
Date                Charles F. Holman III, Director
                    D.C. Office of Human Rights

\_\_9/14/00\_\_  _____
Date                Tulio L. Diaz, Jr., Director
                    Washington Field Office,
                    U.S. Equal Employment Opportunity Commission

## FY 2002 EXTENSION OF WORKSHARING AGREEMENT

Inasmuch as there have been no substantive changes in the processes, procedures, statutes, policies or regulations that would adversely affect or substantially alter the worksharing arrangement between the WASHINGTON FIELD Office and the D. C. Office of Human Rights, or that would affect the processing of charges filed under the pertinent Federal, state or local statutes, the parties agree to extend the current worksharing agreement that was executed on SEPTEMBER 15, 1999 through the FY 2002 Charge Resolution Contract Option Period. This agreement, as well as the attendant Worksharing Agreement may be reopened and amended by mutual consent of the parties.

_____ 8/24/01          _____ 9/22/01
For the FEPA         Date               For the EEOC District Office    Date

FY 2003 EEOC/FEPA MODEL WORKSHARING AGREEMENT

WORKSHARING AGREEMENT
BETWEEN

<u>THE DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS</u>
(full name of FEPA)

and

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FOR FISCAL YEAR 2003

I. INTRODUCTION

A.  The DC OFFICE OF HUMAN RIGHTS hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of _TWO_ or more employees occurring within THE DISTRICT OF COLUMBIA based on RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE (18 OR OLDER), MARITAL STATUS, PERSONAL APPEARANCE, SEXUAL ORIENTATION, FAMILIAL STATUS, FAMILY RESPONSIBILITY, MATRICULATION, POLITICAL AFFILIATION, DISABILITY, SOURCE OF INCOME, OR PLACE OF RESIDENCE OR BUSINESS PURSUANT TO THE DC HUMAN RIGHTS ACT OF 1977, AS AMENDED. The Equal Employment Opportunity Commission, hereinafter referred to as EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act (ADEA) of 1967, as amended (29 U.S.C.§ 621 et.seq.), for unequal wages based on sex under the Equal Pay Act of 1963 (29 U.S.C.§ 206), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1991,(42 U.S.C. § 12101).

B.  In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate _DISTRICT OF COLUMBIA_ and Federal laws.

II. FILING OF CHARGES OF DISCRIMINATION

   A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both EEOC and the FEPA for the purposes of Section 706 (c) and (e) (1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this agreement or by other mutual agreement.

   B. The FEPA shall take all charges alleging a violation of Title VII, ADEA, EPA, or the ADA where both the FEPA and EEOC have mutual jurisdiction, or where EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III. A. 1. below, refer them to the EEOC for initial processing.

   C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction.

   Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the (name of FEPA) within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES).

   D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge. (If applicable state statute or local ordinance requires such disclosures, this sentence may be deleted.)

   (More specific instructions depending on District Office/FEPA procedures should also be included here.)

ii

E.  Within ten calendar days of receipt, each Agency agrees that it will notify both the Charging Party and Respondent of the dual-filed nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes.

III. DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A.  EEOC and the FEPA will process all Title VII, ADA, and ADEA charges that they originally receive.

   1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges f or a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

   In addition, the EEOC will initially process the following charges:

   -- All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

   -- All disability-based charges which may not be resolved by the FEPA in a manner consistent with the ADA.

   -- All concurrent Title VII/EPA charges;

   -- All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision making process;

   -- All charges filed by EEOC Commissioners;

   -- Charges also covered by the Immigration Reform and Control Act;

iii

-- Complaints referred to EEOC by the Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691.

-- Any charge where EEOC is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

-- Any charge alleging retaliation for filing a charge with EEOC or for cooperating with EEOC; and

-- All charges against Respondents which are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

-- (Add additional provisions specific to District Office here)

2. The FEPA will initially process the following types of charges:

-- Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

-- Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

-- All charges which allege more than one basis of discrimination where at least one basis is not covered by the laws administered by EEOC but is covered by the FEPA Ordinance, or where EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but FEPA can process that charge.

-- All charges against Respondents which are designated for initial processing by FEPA in a supplementary memorandum to this Agreement; and

iv

-- All disability-based charges against Respondents over which EEOC does not have jurisdiction.

(Add additional provisions specific to FEPA here.)

    B.    Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

    C.    Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within _10_ working days.

IV.  EXCHANGE OF INFORMATION

    A.    Both the FEPA and EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, ADEA, and ADA.

    B.    In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

V.  RESOLUTION OF CHARGES

    A.    Both agencies will adhere to the procedures set out in EEOC's State and Local Handbook, including current revisions thereto.

B. For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

1. jurisdictional requirements,

2. investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

3. relief, if appropriate,

4. mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

C. In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles.

D. For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

VI. IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A. Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be DAVID GONZALEZ. The liaison official for the EEOC will be NANNE CHANDLER-WILBURN

B. The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C. EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D. If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Field Programs for resolution.

E. This Agreement shall operate from the first (1st) day of October 2002 to the thirtieth (30th) day of September 2003 and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date ___8/20/02___  _____
(Name), District Director
Equal Employment Opportunity Commission

(_____)- District Office

Date ___8/16/02___  _____
(Name) Nadine Wilburn, Interim Director

The D.C Office of Human Rights
(Full Name of FEPA)

vii

Attachment 4

## FY 2004 EXTENSION OF WORKSHARING AGREEMENT

Inasmuch as there have been no substantive changes in the processes, procedures, statutes, policies or regulations that would adversely affect or substantially alter the worksharing arrangement between the Washington Field Office and the District of Columbia Office of Human Rights, or that would affect the processing of charges filed under the pertinent Federal, state or local statutes, the parties agree to extend the current worksharing agreement that was executed on August 27, 2002 through the FY 2004 Charge Resolution Contract Option Period. This agreement, as well as the attendant Worksharing Agreement may be reopened and amended by mutual consent of the parties.

_____     9/12/03
Kenneth Saunders, Acting Director     Date
D.C. Office of Human Rights

_____     OCT 0 1 2003
Javier Chacon, Acting Director     Date
Washington Field Office